THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND VALEK, Defendant-Appellant.

Second District   No. 77-407

Opinion filed March 20, 1979.

Allen L. Wiederer and Mary Heyrman, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and William L. Browers, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal arises out of the trial court's ruling denying the defendant's motion to vacate his guilty plea.

The defendant was charged with aggravated battery. He pleaded not guilty to that charge and requested a jury trial. Subsequently, the court was advised that the defendant wished to change his plea to guilty to the lesser-included offense of battery. At that time, defense counsel, in reply to the court's inquiry as to whether the defendant wished to plead guilty, said:

> "Right. Mr. Valek has such a health problem, Judge. I don't think he would be able to handle a trial and this is the arrangement we would ask for, yes."

The trial court then admonished the defendant as to his right to trial by jury, his right to confront witnesses, that the State must prove him guilty beyond a reasonable doubt and that the offense "being a misdemeanor the punishment is not more than 364 days in an institution other than the penitentiary." At the sentencing hearing the defendant asked for probation, which was granted, with the stipulation that he repay the victim for her medical expenses in the amount of $524, or such part of that amount as the probation department found was established as being due to the battery. (Later, this was reduced to $485.)

The defendant failed to make any restitution whatsoever and the State filed a petition to revoke his probation. The defendant then moved to vacate his guilty plea and plead not guilty. While the defendant pleaded guilty in April of 1976, he did not file his motion to vacate his plea until March 1977, after the State had filed the motion to revoke the

defendant's probation. However, the trial court determined it had jurisdiction to hear the motion to vacate the guilty plea because the record at the original guilty plea hearing did not indicate that the defendant had ever been admonished pursuant to Supreme Court Rule 605(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 605(b)) requiring that the defendant be informed that he must apply in writing to the court within 30 days of sentencing under the guilty plea, if he wished to withdraw such plea. Thus, the court decided that it had jurisdiction to hear the motion to vacate the guilty plea, even though term time had elapsed.

The defendant then moved to vacate his guilty plea on the basis that he was physically unable or "unfit" to stand trial at the time that he entered the guilty plea and that he had been pressured by the spector of the physical ordeal of standing trial to plead guilty, thus avoiding such pressure. Therefore, the defendant says his guilty plea was not a free and voluntary act and should be vacated. The trial court rejected that argument and denied the motion to vacate, which triggered this appeal.

The defendant raises two questions in this appeal: (1) whether the proceedings before the court at the guilty plea hearing raised a bona fide doubt concerning his fitness to stand trial, and (2) whether the defendant can properly be required to make restitution as part of a sentence of probation when he was not advised that he would have to make such restitution in his admonishment before pleading guilty.

The defendant sets out two other issues: (a) whether a defendant who is physically unfit to stand trial is competent to plead guilty and (b) whether a guilty plea is voluntary when it is induced by the possibility of not physically surviving a trial. However, we disregard these two issues since they assume the very thing defendant had the burden of proving— that he was physically unfit to stand trial and that it was this fact that induced him to plead guilty. There is nothing in the record tending to establish either of these assumptions as being true.

The only evidence before us bearing on the defendant's physical condition is contained in the brief comment of defense counsel at the guilty plea hearing stated above. The defendant pleaded not guilty at his arraignment on January 16, 1976, and the public defender was appointed to defend him. On February 13, 1976, the defendant discharged the public defender and employed private counsel in his stead. Various discovery motions followed. On April 8, 1976, defense counsel appeared with the defendant and disclosed to the court that in the meantime he had had plea negotiations with the State's Attorney, as the result of which the charge was to be reduced to simple battery, to which the defendant would plead guilty. It was at that time that defense counsel made the remark to the court as to the defendant's health problem. Defendant had not previously raised a question as to his fitness to stand trial and he did

not at the guilty plea hearing specifically raise such question or offer any medical testimony or indicate to the court in any other way that he desired a hearing on his fitness to stand trial. No issue was made following the quoted remark as to the voluntariness of the guilty plea. The defendant in this appeal contends that defense counsel's brief remark should have caused the trial court to initiate an investigation to determine whether the defendant was fit to stand trial, invoking section 5—2—1 ("Fitness for Trial or Sentencing") of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1) which provides, in part, as follows:

> "Fitness for Trial or Sentencing.) (a) For the purposes of this Section a defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:
>
> (1) to understand the nature and purpose of the proceedings against him; or
>
> (2) to assist in his defense.
>
> (b) The question of the defendant's fitness may be raised, before trial or during trial. The question of the defendant's fitness to be sentenced may be raised after judgment but before sentence. In either case the question of fitness may be raised by the State, the defendant or the court.
>
> (c) When a bona fide doubt of the defendant's fitness to stand trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings."

■■ We see nothing in the brief remark of defense counsel to the trial court—made after he had already agreed with the State's Attorney on a negotiated plea—to cause the court to invoke the prerogatives afforded under the quoted language above and initiate an investigation as to the defendant's fitness to stand trial. While the remark made by defense counsel about the defendant having a "health problem" might be construed as indicating that the defendant had some reason to be concerned about the stress of a trial, this was never specifically raised as an issue and the defendant neither asked for a continuance due to his health or requested the court to hold a fitness hearing. The brief words spoken by defense counsel after the plea bargain with the State's Attorney had already been concluded are hardly either an explanation or a request which would logically trigger an investigation by the court. It is not unusual for a person to make some exculpatory remark before pleading guilty and certainly this remark by defense counsel did not raise a presumption or even a doubt that the defendant was fit to stand trial or to assist his counsel. The defendant's physical condition may have been taken into account in discussions between the defendant and his own

attorney but the remark about a "health problem" was not sufficient to alert the court that the defendant was pleading guilty because of the pressure of his physical handicap. We, therefore, see no merit in the defendant's contention that his plea of guilty was not his free and voluntary act.

The defendant also contends that the trial court erred in imposing the condition of restitution as part of his sentence of probation since he was not advised of this possibility when he pleaded guilty. This is, we think, a specious argument, since at the time of the guilty plea the defendant had neither requested nor been granted probation. Probation, as is customary, was considered and granted later at the sentencing hearing and it was at that time that the trial judge stipulated that restitution would be a condition of probation. This is an entirely normal and customary procedure. Section 5—6—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—3)) reads, in part, as follows:

"(b) The Court may in addition to other conditions require that the person:

*   *   *

(10) make restitution or reparation in an amount not to exceed actual loss or damage to property and pecuniary loss. *   *   *"

■■ Thus, in applying for probation the defendant is presumed to know that making restitution is a possible consequence of such sentence. Moreover, it is entirely logical and just that restitution be made to the person who suffers financial loss by the defendant's unlawful act. This is not in the nature of punishment inflicted on the defendant by society and is not covered by Supreme Court Rule 402 (Ill. Rev. Stat. 1975, ch. 110A, par. 402) with regard to admonishments at guilty pleas. Indeed, an application for probation is not granted until after an investigation made by the probation department, so it is hardly to be expected that the defendant could have been admonished as to the possibility of restitution at the hearing on the guilty plea, since probation was not determined at that time. Neither justice nor logic, therefore, gives any support to the defendant's attempt to equate his situation with that of the defendant in *People v. Washington* (1955), 5 Ill. 2d 58, where the defendant was sentenced to life imprisonment without having been fully admonished as to that possibility, or *People v. Willingham* (1976), 38 Ill. App. 3d 612, where the defendant was given consecutive prison terms without proper admonishment when he pleaded guilty.

At the time the sentence of probation was imposed, the condition of restitution was imposed along with it, and the defendant made no objection to the idea of restitution, only questioning the amount of medical bills related to the battery. As to that, the trial judge ordered that the probation department investigate and determine the proper amount,

and the original figure was later reduced on the probation department's recommendation. The defendant accepted the principle of restitution at the time he asked for and was granted probation. So far as the record indicates, he has paid no part of the victim's medical bills and it is apparent that the question of restitution has become a major problem, not because of a dispute over the amount, but because the State is now threatening to revoke the defendant's probation for failure to take any steps to make restitution, as he obligated himself to do. It appears that the defendant wishes to take advantage of probation without its accompanying conditions.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

SEIDENFELD and NASH, JJ., concur.